Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Jacquelyne VanEmmerik (SBN 399388)
**MOON LAW GROUP, P.C.**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
Email: kmoon@moonlawgroup.com
Email: afeghali@moonlawgroup.com
Email: jvanemmerik@moonlawgroup.com

Attorneys for Plaintiff, *Madison Laird*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON LAIRD, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVANADE INC., a Washington corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:23-cv-04237-CRB<br><br>[Honorable Charles R. Breyer, Courtroom 6]<br><br>**PLAINTIFF MADISON LAIRD'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed with the Declaration of Kane Moon, Declaration of Lisa Mullins of ILYM Group, Inc., and [Proposed] Order]<br><br>Date: December 12, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6<br><br>Complaint filed: June 28, 2023<br>Trial date: Not set |

**TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on December 12, 2025, at 10:00 a.m., in Courtroom 6 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Madison Laird ("Plaintiff") will move the Court for an Order granting preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement") between Plaintiff and Defendant Avanade Inc. Specifically, Plaintiff will move the Court for an Order:

1.  Preliminarily finding the terms of the Settlement fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2), Plaintiff and Class Counsel adequately represented the Class, the Settlement was negotiated at arm's length, the relief provided under the Settlement is adequate in light of all relevant considerations, and the Settlement treats Class Members equitably relative to each other;

2.  Preliminarily certifying, for settlement purposes only, the Class described in the Settlement, as follows: All current and former employees of Defendant who were hired in the United States at any time during the period from June 18, 2018, through April 27, 2025;

3.  Appointing Plaintiff as representative of the Class;

4.  Appointing Moon Law Group, P.C. as counsel for the Class;

5.  Approving the use of ILYM Group, Inc. as the Administrator;

6.  Directing that the Class Notice issue to Class Members as provided in the Settlement; and,

7.   Scheduling a Final Fairness Hearing on a date approximately 150 days after preliminary approval to consider whether the Settlement should be finally approved as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e) and to rule on the Motion for Attorney's Fees, Costs, and Enhancement Award to be submitted by Plaintiff.

The Motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Kane Moon and Exhibits therein, the Declaration of Lisa Mullins of ILYM Group, Inc. and Exhibits therein, the records and files in this Action, and any further evidence or oral argument the Court may properly receive before or at the Hearing.

Respectfully submitted,

Dated: November 17, 2025             MOON LAW GROUP, P.C.

By:_____
Kane Moon, Esq.
Allen Feghali, Esq.
Jacquelyne VanEmmerik, Esq.

Attorneys for Plaintiff, *Madison Laird*

PLAINTIFF MADISON LAIRD'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ............................. 1

    A.    Relevant Procedural History ........................................................ 1

    B.    The Parties and Putative Class .................................................... 2

    C.    Discovery, Analysis, and Settlement Negotiations ...................... 3

    D.    Material Terms Of The Settlement .............................................. 3

III.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL ....................... 8

    A.    Legal Standard ............................................................................ 8

        1.    The Court Is Likely To Certify The Class For Purposes Of Judgment
            On The Settlement ................................................................. 9

            (a)    Numerosity ................................................................. 9

            (b)    Commonality ............................................................ 10

            (c)    Typicality ................................................................. 10

            (d)    Adequacy .................................................................. 11

            (e)    Predominance and Superiority .................................. 12

        2.    The Court Is Likely To Find The Settlement Is Fair, Adequate, and
            Reasonable ......................................................................... 13

            (a)    The Class Representative And Class Counsel Have
                Adequately Represented The Class .......................... 13

            (b)    The Settlement Was Negotiated At Arm's Length ................. 14

            (c)    The Relief Provided For The Class Is Adequate ..................... 14

            (d)    The Settlement Treats Class Members Equitably ................... 15

            (e)    Identifying Agreements .............................................. 16

IV.  THE NOTICE PROCESS AND NOTICE MERIT APPROVAL ................... 16

    A.  The Notice Process Is Statutorily Compliant ............................... 16

    B.  The Notice Is Statutorily Compliant ............................................ 16

V.  CONCLUSION ................................................................................. 17

PLAINTIFF MADISON LAIRD'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................. 12

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986)....................................9

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ........................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................... 11, 12, 13, 14

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ............................ 11

*Hansberry v. Lee*, 311 U.S. 32 (1940)........................................................................ 11

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ....................... 11

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980)............................................ 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 10

**RULES**

Cal. Civ. Code §§ 1786 *et seq.*...................................................................... 1, 7

Fed. R. Civ. P. §§ 23(a) *et seq.* ....................................................... 9, 10, 11, 12

Fed. R. Civ. P. §§ 23(c) *et seq.* ........................................................................ 17

Fed. R. Civ. P. §§ 23(e) *et seq.* ....................................................... 1, 9, 15, 16

**TREATISES**

5 Moore's Federal Practice § 23.05[1] (1978) ...................................................9

Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97
   (2009) ............................................................................................... 10

Newberg & Conte, Newberg on Class Actions, § 3.5 (4th ed. 2002)...........................9

PLAINTIFF MADISON LAIRD'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**STATE CASES**

*McGhee v. Bank of America*, 60 Cal.App.3d 442 (1976) ............................................... 13

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000)........................................9

**STATUTES**

15 U.S.C. § 1681b(b)(2)(A) ......................................................................... 1, 14

15 U.S.C. §1681g(c) ........................................................................................1

15 U.S. Code § 1681n(a)(1) ............................................................... 12, 13, 14

PLAINTIFF MADISON LAIRD'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Madison Laird ("Plaintiff") moves the Court for preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement") between Plaintiff and Defendant Avanade Inc. ("Defendant") (Plaintiff and Defendant, the "Parties"). The Settlement, which was reached after extensive discovery and an arm's-length mediation, resolves class allegations arising under the Fair Credit Reporting Act ("FCRA") and related state law statutes, and satisfies the criteria for settlement approval under Federal Rule of Civil Procedure 23(e). (Declaration of Kane Moon ["Moon Decl."], ¶ 3.) Plaintiff further moves the Court for preliminary certification of the putative Class, for settlement purposes only, and approval of the proposed Class Notice.

### II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

#### A.    Relevant Procedural History

On June 28, 2023, Plaintiff filed a Class Action Complaint (the "operative Complaint") against Defendant in the Superior Court of the State of California for the County of San Francisco. (*Id*. at ¶ 4.) The operative Complaint alleges three class causes of action for violation of the Fair Credit Reporting Act [15 U.S.C. §§ 1681b(b)(2)(A), 1681g(c)] and the Investigative Consumer Reporting Agencies Act [Cal. Civ. Code §§ 1786 *et seq*.]. (*Id*.)

On August 18, 2023, Defendant filed a Notice of Removal in the United States District Court for the Northern District of California. (*Id*. at ¶ 5.) Between August 2023 and April 2024, the Parties discussed potential avenues for informally resolving the instant action (this or the "Action"), including through private mediation. (*Id*.)

On April 9, 2024, Plaintiff served a First Set of Special Interrogatories and Requests for Production of Documents. (Moon Decl., ¶ 6.) However, following further discussions about informal dispute resolution, the Parties agreed to schedule private mediation and engage in an informal exchange of data and documents in preparation therefor. (*Id.*)

On March 13, 2025, the Parties attended private mediation with experienced class action mediator, Tripper Ortman, Esq. (*Id.* at ¶ 7.) The following day, a settlement in principle was reached through the Parties' acceptance of a Mediator's Proposal. (Settlement, ¶ 2.2.) Before mediation, Plaintiff obtained, through informal discovery, in addition to other data and documents, a sample of all notices, disclosures, and authorizations regarding background investigations issued to Class Members during the Class Period. (*Id.* at ¶ 2.3.)

## B.  The Parties And Putative Class

Plaintiff worked for Defendant as a General Manager, Cloud Transformation Architect from December 17, 2020, to April 26, 2022. (Moon Decl., ¶ 8.) Defendant is an international information technology consultant headquartered in Seattle, Washington. (*Id.*) When applying to work for Defendant, Plaintiff was issued Disclosures for Investigative Consumer Reports to be procured by Defendant. (*Id.*) All Class Members received the same or similar disclosures concerning consumer reports to be procured by Defendant as part of their employment application process. (*Id.*)

The putative Class includes all current and former employees of Defendant who were hired in the United States at any time during the period from June 18, 2018, through April 27, 2025 ("Class" or "Class Members"). (Settlement, ¶ 1.4.) The Class is comprised of approximately 4,383 members through January 27, 2025. (*Id.* at ¶ 7.0.)

### C.    Discovery, Analysis, and Settlement Negotiations

In preparation for mediation, the Parties agreed to an informal exchange of data and documents, which included, but was not limited to, the total number of current and former employees of Defendant who received Disclosures for Investigative Consumer Reports as part of their employment application process; and a sample of all Disclosures, Acknowledgements, Authorizations, State- and Local-Law notices, and Summaries of Rights regarding background investigations procured by Defendant for employment purposes. (Moon Decl., ¶ 10.) The data and documents enabled Class Counsel to evaluate the alleged claims in light of relevant case and statutory law. (*Id.*) In turn, this enabled Class Counsel to estimate the probability of class certification, Plaintiff's success on the merits, and Defendant's maximum monetary exposure. (*Id.*)

Before mediation, the Parties briefed their respective claims and defenses, and exchanged their briefs with each other and the mediator. (*Id.* at ¶ 11.)

The Parties participated in a full-day mediation presided over by experienced class action mediator, Tripper Ortman, Esq., on March 13, 2025. (Settlement, ¶ 2.1.) The Parties went into the mediation willing to settle the dispute, but also prepared to litigate their respective positions through trial and appeal if a settlement was not reached. (Moon Decl., ¶ 12.) Mediation was, therefore, adversarial and conducted at arm's length. (*Id.*) The Parties also went into the mediation willing to discuss and concede to the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. (*Id.*) Mediation was, resultingly, successful and led to the Settlement. (*Id.*)

### D.    Material Terms of the Settlement

The material terms of the Settlement are set out herein. A true and correct copy of the Settlement is attached to the Declaration of Kane Moon as **Exhibit 1**.

1.  **Administrator Expenses Payment** means the court-approved amount allocated to the Administrator, ILYM Group, Inc., for reimbursement of its reasonable fees and expenses incurred to administer the Settlement, not to exceed $25,000.00. (Settlement, ¶¶ 1.2, 1.3.) A true and correct copy of ILYM Group, Inc.'s administration bid is attached to the Declaration of Kane Moon as **Exhibit 2**.

2.  **Class Certification.** The Parties stipulate to class certification for purposes of settling the Action only. (*Id*. at ¶ 12.2.)

3.  **Class Counsel** means Kane Moon, Allen Feghali, and Jacquelyne VanEmmerik of Moon Law Group, P.C. (*Id*. at ¶ 1.5.)

4.  **Class Counsel Fees Payment** means the court-approved amount allocated to Class Counsel for reimbursement of their reasonable fees incurred to prosecute the Action, not to exceed one-third of the Gross Settlement Amount. (Settlement, ¶ 1.6.) One-third of the Gross Settlement Amount is $100,000.00. (*Id*. at ¶¶ 1.22, 3.1.2.)

5.  **Class Counsel Expenses Payment** means the court-approved amount allocated to Class Counsel for reimbursement of their reasonable expenses incurred to prosecute the Action, not to exceed $20,000.00. (*Id*. at ¶ 1.7.) A true and correct copy of Class Counsel's itemized list of current litigation expenses is attached to the Declaration of Kane Moon as **Exhibit 3**.

6.  **Class Notice** means the court-approved Notice of Class Action Settlement and Final Approval Hearing to be mailed to Class

Members in English. (Settlement, **Exhibit A**.)

7.  **Class Representative Service Payment** means the court-approved payment allocated to the Class Representative for his services in support of the Action and General Release in favor of the Released Parties, not to exceed $7,500.00. (Settlement, ¶ 1.14.)

8.  **Effective Date** means the date on which the Court's Final Approval Order and entry of Judgment become Final. (*Id*. at ¶ 1.18.) "Final" shall mean the latest of: (i) if there is an appeal of the judgment, the date the Final Approval Order and Judgment are affirmed on appeal, the date of dismissal of such appeal, or the expiration of the time to file a petition for writ of certiorari; (ii) if a petition for writ of certiorari is filed, the date of denial of the petition for writ of certiorari, or the date the Final Approval Order and Judgment are affirmed pursuant to such petition; or (iii) if no appeal is filed, the expiration date of the time for filing or noticing any appeal of the Final Approval Order and Judgment. (*Id*. at ¶ 1.18.)

9.  **Escalator Clause:** Defendant represents that it hired approximately 4,383 Class Members during the time period from June 28, 2018, through January 27, 2025. (*Id*. at ¶ 7.0.) If the total number of hired Class Members during the Class Period exceeds the number of Class Members hired through March 13, 2025 by more than 10%, Defendant shall either (1) pay the pro rata percentage increase in excess of 10% to the Gross Settlement Amount to include the additional hired Class Members, or (2) end the Class Period on the

date the total number of hired Class Members equals but does not exceed a 10% increase. (Settlement, ¶ 7.0.)

10.     **Gross Settlement Amount** means $300,000.00, the total amount Defendant agrees to pay under the Settlement, except as provided in Paragraph 7.0 of the Settlement. (*Id*. at ¶ 1.22.) The Gross Settlement Amount will pay the Individual Class Payments, Class Counsel Fees Payment, Class Counsel Expenses Payment, Class Representative Service Payment, and Administration Expenses Payment. (*Id*.)

11.     **Individual Class Payment** means the Participating Class Member's equal share of the Net Settlement Amount. (*Id*. at ¶ 1.23.)

12.     **Net Settlement Amount** means the Gross Settlement Amount less the following Court-approved payments: Class Counsel Fees Payment, Class Counsel Expenses Payment, Class Representative Service Payment, and Administration Expenses Payment. The remainder is to be paid to Participating Class Members as Individual Class Payments. (*Id*. at ¶ 1.24.) The Net Settlement Amount is estimated to be $147,500.00.[1]

13.     **Released Class Claims** means any and all claims which were or could have been asserted against the Released Parties based upon,

---

[1] The Gross Settlement Amount of $300,000.00, less a maximum fees payment of $100,000.00, costs payment of $20,000.00, enhancement payment of $7,500.00, and administration expenses payment of $25,000.00. (Settlement, ¶¶ 3.0, *et seq*.)

PLAINTIFF MADISON LAIRD'S MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

arising out of, or relating to the facts or allegations set forth in any complaint in the Action (including any subsequently amended complaints), including but not limited to claims for violations of background check requirements; violations of background check notice requirements; violations of background check authorization requirements; violations of consumer report requirements; violations of investigative consumer report requirements; violations of credit check requirements; unfair business practices; willful violations for any or all of the foregoing; restitution for any or all of the foregoing; any penalties, including statutory and civil penalties, related to any or all of the foregoing; attorneys' fees or costs related to any or all of the foregoing; interest related to any or all of the foregoing; and/or any other damages or amounts related to any or all of the foregoing. This release includes, but is not limited to, claims pursuant to the Fair Credit Reporting Act (15 U.S.C. §§ 1681, *et seq*.), the California Investigative Consumer Reporting Agencies Act (California Civil Code §§ 1786 *et seq*.), and California Business & Professions Code §§ 17200 *et seq*. (Settlement, ¶ 5.1.) The Released Class Claims are limited to claims arising during the Class Period. (*Id*. at ¶ 5.1.1.)

14.    **Released Parties** means Defendant and Accenture LLP, and all of their former, present or future parents, subsidiaries, and/or affiliates; each of the foregoing's present, former, or future owners, directors, officers, shareholders, partners, managing agents, employees,

insurers, successors, predecessors, contractors, members, stockholders, representatives, benefit plan fiduciaries, and assigns; any and all agents, legal representatives, and/or attorneys of all of the foregoing entities or individuals; and any entities or individuals alleged to be joint employers with Avanade Inc. and/or Accenture LLP. (Settlement, ¶ 1.31.)

15. **Tax Allocation**. Individual Class Payments to Participating Class Members shall be allocated 100% as non-wage damages and interest. (*Id*. at ¶ 3.1.3.3.)

16. **Withdrawal.** If the number of valid and timely Requests for Exclusion exceeds ten percent (10%) of the total of all Class Members, Defendant may elect to withdraw from the Settlement. (*Id*. at ¶ 8.0.)

17. **Uncashed Checks.** For any Class Member whose Individual Class Payment check is uncashed and cancelled after the void date, or for any Class Member whose envelope is returned and no forwarding address can be located for the Class Member after reasonable efforts have been made, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue." (*Id*. at 4.1.3.)

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Legal Standard

The claims, issues, or defenses of a certified class—or a class proposed to be

8

certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." (Fed. R. Civ. P. § 23(e).) Court-approval is contingent on the parties providing the court "with information sufficient to enable it to determine whether to give notice of the [settlement] to the class." (Fed. R. Civ. P. § 23(e)(1)(A).) The information must demonstrate the court is likely to (1) "certify the class for purposes of judgment on the [settlement]," and (2) find the settlement is fair, adequate, and reasonable considering: (a) the class representatives and class counsel have adequately represented the class; (b) the [settlement] was negotiated at arm's length; (c) the relief provided for the class is adequate...and (d) the [settlement] treats class members equitably relative to each other." (Fed. R. Civ. P. §§ 23(e)(1)(B), 23(e)(2).)

### 1. The Court Is Likely To Certify The Class For Purposes Of Judgment On The Settlement

#### (a) Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable[.]" (Fed. R. Civ. P § 23(a)(1).) The Ninth Circuit has not quantified this standard. (*Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).) However, federal precedent instructs that a class with twenty-five to forty members raises a presumption that joinder is impracticable. (*See id*. at 654 [district courts have enacted presumptions that the numerosity requirement is satisfied by a showing of twenty-five to thirty members]; *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), citing 5 Moore's Federal Practice § 23.05[1] at n. 7 (1978) [as a general rule, twenty-one class members is inadequate, and forty class members is adequate]; Newberg & Conte, Newberg on Class Actions, § 3.5 at 247 (4th

ed. 2002).) Here, the Class is comprised of at least approximately 4,383 members. (Settlement, ¶ 7.0, Moon Decl., ¶ 9.). Federal precedent, therefore, instructs that the Class is sufficiently numerous.

### (b)    Commonality

Federal Rule of Civil Procedure 23(a)(2) requires there be "questions of law or fact common to the class[.]" (Fed. R. Civ. P § 23(a)(2).) There are questions of law or fact common to the class when "the class members have suffered the same injury." (*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).) This does not mean, merely, that all class members have suffered from the same provision of law. (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).) It means that all class members have suffered from the same injury due to a common contention amenable to classwide resolution. (*Id*.) Thus, commonality concerns the existence of common answers apt to drive the resolution of the litigation. (*Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009).) Here, all Class Members have suffered, allegedly, from a violation of their right to privacy and/or from an invasion of privacy due to Defendant's alleged failure to comply with the statutory requirements outlined in the FCRA relating to obtaining consent for background, credit, consumer, or similar investigatory checks. Because the Class Members' alleged injury is rooted in a common contention, i.e., violation of the FCRA, the Class has sufficient commonality.

### (c)    Typicality

Federal Rule of Civil Procedure 23(a)(3) requires the claims or defenses of the representative to be typical of the claims or defenses of the class. (Fed. R. Civ. P § 23(a)(3).) The claims or defenses of the representative are typical of the claims or

defenses of the class if "they are reasonably co-extensive with those of absent class members[.]" (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338.) The claims or defenses of the representative cannot be so unique as to be capable of preoccupying the representative or otherwise endangering the claims of absent class members. (*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).) Here, Plaintiff is raising the same FCRA claim as the Class Members and has not alleged any unique claims or defenses in the Action. (*See* Moon Decl., ¶¶ 4, 37.) For these reasons, Plaintiff's claims are typical of the claims of the Class.

### (d)    Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires the representative to "fairly and adequately protect the interests of the class[.]" (Fed. R. Civ. P § 23(a)(4); *see Hanlon*, 150 F.3d at 1020, *citing Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) ["To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them."].) The representative can fairly and adequately protect the interests of the class if (1) the named plaintiff and his counsel do not have any conflicts of interest with other class members, and (2) the named plaintiff and his counsel will vigorously prosecute the action on behalf of the class. (*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).) Here, Plaintiff does not have any known conflicts of interest with other Class Members, nor any perceptible circumstances that could raise unique defenses to the class allegations. (Moon Decl., ¶ 37.) Further, Plaintiff's Counsel does not have any known conflicts of interest with any Class Members and, in the event the Settlement does not receive final approval, Plaintiff's Counsel are prepared and willing

11

1    to vigorously prosecute the Action on behalf of the Class. (Moon Decl., ¶ 37.) For these

2    reasons, Plaintiff's representation of the Class is adequate.

3                    *(e)    Predominance and Superiority*

4          Federal Rule of Civil Procedure 23(b)(3) permits a class action to be maintained

5    if, in addition to satisfying the requirements of Rule 23(a), the court finds the common

6    questions of law or fact predominate over any questions affecting only individual

7    members, and a class action is superior to other available means for fairly and

8    adequately adjudicating the controversy. (Fed. R. Civ. P § 23(a)(3).) This rule has been

9    interpreted as having a predominance and superiority requirement:

10         The predominance requirement necessitates an analysis of whether the proposed

11   class is sufficiently cohesive to warrant adjudication by representation. (*Hanlon*, *supra*,

12   150 F.3d at 1022, *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622 (1997).)

13   This analysis requires a determination of whether the common questions of law or fact

14   are a significant aspect of the case and can be resolved for all class members in a single

15   adjudication. (*Id.*) If they are and can be, "there is clear justification for handling the

16   dispute on a representative [basis]." (*Id.*) Here, the potential legal remedies dominate, if

17   not wholly control, the Action. First, all Class Members have the same potential legal

18   remedies: actual or statutory damages pursuant to 15 U.S. Code § 1681n. To the extent

19   any distinct remedies exist, such variants would likely be homogenous. Further, to the

20   extent a Class Member believes he or she has actual damages that exceed his or her

21   Individual Class Payment, that Class Member will have an opportunity to exclude

22   themselves from the Settlement and preserve his or her right to collect such damages in

23   a separate, individual action. (Settlement, ¶ 6.12.1.) Second, there is a common nucleus

24   of facts that dominate the Action. For example, all Class Members would need to

answer (1) whether Defendant's disclosure was "standalone"; (2) whether Defendant's disclosure was "clear and conspicuous"; (3) whether any violation was "willful"; and (4) whether Defendant has any viable classwide defenses.

The superiority requirement necessitates determination of whether the objectives of the class action procedure will be achieved in the case, which requires a "comparative evaluation of alternative mechanisms of dispute resolution." (*Hanlon*, *supra*, 150 F.3d at 1023.) Here, the alternative method of resolution is individual actions for presumptively small amounts of consequential damages. (*See* 15 U.S. Code § 1681n(a)(1) [permitting a statutory damages award of $100.00 per consumer].) Separate actions would not only unnecessarily burden the judiciary but likely prove uneconomical for potential plaintiffs: in most cases, litigation costs would dwarf potential recovery. The proposed class action is, therefore, paradigmatic because fair examination of the alternative method results in the conclusion that a class action is the preferred procedure.

## 2. The Court Is Likely To Find The Settlement Is Fair, Adequate, and Reasonable

### (a) The Class Representative and Class Counsel Have Adequately Represented the Class

Here, Plaintiff has adequately represented the class by obtaining counsel qualified to conduct the litigation, providing any and all information needed by Class Counsel in furtherance of the Action, and not having interests antagonistic to those of the Class. (*See McGhee v. Bank of America*, 60 Cal.App.3d 442, 450 (1976); Moon Decl., ¶¶ 4-12, 18-29, 37.) Class Counsel has adequately represented the Class by participating in an early mediation with a trusted neutral, engaging in a comprehensive

1  informal discovery process, and employing their expertise to obtain the best results for

2  the Class. (Moon Decl., ¶¶ 4-12.)

3          *(b)     The Settlement Was Negotiated At Arm's Length*

4        Here, the Settlement was negotiated at arm's-length through private mediation

5  presided over by experienced class action mediator, Tripper Ortman, Esq. (Moon Decl.,

6  ¶ 12.) The Parties' use of a neutral to intermediate their disparate factual assertions,

7  legal arguments, and valuations supports this fact. (*See*, *e.g.*, *Hanlon*, *supra*, 150 F.3d at

8  1029 [a mediator present assured the court "that [the attorneys' fees] w[ere] not the

9  result of collusion or a sacrifice of the interests of the class"].) The Parties'

10  comprehensive exchange of informal discovery ahead of mediation supports the same

11  because it shows the Settlement was based on evidence, rather than an arbitrary or

12  collusive procedure. (*See* Moon Decl., ¶¶ 10-12.)

13          *(c)     The Relief Provided For The Class Is Adequate*

14        The FCRA provides that, "[a]ny person who willfully fails to comply with any

15  requirement imposed [thereunder] with respect to any consumer is liable to that

16  consumer in an amount equal to the sum of (1) (A) any actual damages sustained by the

17  consumer as a result of the failure or damages of not less than $100 and not more than

18  $1,000." (15 U.S. Code § 1681n(a)(1).) Plaintiff alleges Defendant willfully failed to

19  comply with the requirements of the FCRA, including the standalone requirement set

20  out under 15 U.S.C. §§ 1681b(b)(2)(A). Though the FCRA imposes a statutory

21  minimum for the willful violation of this requirement, this minimum is not mandatory

22  in the settlement context, where, as here, (1) the merits have not been decided, and the

23  defendant has asserted strong defenses, posing a legitimate threat to success on the

24  merits, *see* Moon Decl., ¶ 17(a); (2) there exist unquantifiable costs and risks,

including, but not limited to, substantial delay of resolution due to class certification, further litigation, trial, and appeal, *see* Settlement, ¶ 12.1, all of which reasonably discount the settlement value, *see id.* at ¶ 17(b); (3) the Settlement will be simply and effectively distributed by a trusted settlement administrator, through equal distribution of the Net Settlement Amount and the best practicable process for identifying Class Members and their current addresses, *see* Settlement, ¶ 6.4 and Moon Decl., ¶ 17(c); and (4) the Administration Expenses Payment, Class Counsel Fees and Expenses Payments, and Class Representative Enhancement Payments are fair and reasonable, as will be demonstrated in a subsequent Motion by Class Counsel. (*See id.* at ¶ 17(d); Fed. R. Civ. P. § 23(e); *see generally* Declaration of Lisa Mullins of ILYM Group, Inc.)

These factors contributed to the Gross Settlement Amount of $300,000.00. (Settlement, ¶ 3.0, Moon Decl., ¶ 17.) Before deductions, for the approximately 4,383 members of the Class, the average gross recovery is approximately $68.45 per Class Member, *i.e.*, $300,000.00 / 4,383. After deductions, for the approximately 4,383 members of the Class, the average gross recovery is approximately $33.65 per Class Member, *i.e.*, $147,500.00 / 4,383. This value falls within the range of reasonableness because, while the statutory penalty available ranges from $100.00 to $1,000.00, the lack of a merits judgment, the attendant risks of further litigation, the ease with which such payment will be distributed, and the fairness and reasonableness of the deductions made from the Gross Settlement Amount, render this payment adequate. (*See id*.)

### (d)    The Settlement Treats Class Members Equitably

Here, the Settlement treats Class Members equitably relative to each other, as the Net Settlement Amount will be shared equally by all Participating Class Members. (*See* Settlement, ¶ 3.1.3.1.) Therefore, each Participating Class Member will receive the

same damages award. (*See* Settlement, ¶ 3.1.3.1.) An equitable division is reasonable because Plaintiff alleges all Class Members suffered from the same FCRA violation as a result of receiving the same or similar violative consumer report disclosure. Should a Class Member believe he or she suffered to a greater degree, that Class Member may exclude himself or herself from the Settlement, reserving the right to pursue an individual action. (*Id*. at ¶ 6.12.1.)

> (e)    *Identifying Agreements*

Here, Plaintiff entered into a separate, confidential individual settlement agreement with Defendant in resolution of his personal allegations for wrongful termination. (*See* Fed. R. Civ. P. § 23(e)(3).)

## IV.    THE NOTICE PROCESS AND NOTICE MERIT APPROVAL

### A.    The Notice Process Is Statutorily Compliant

The court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." (Fed. R. Civ. P. § 23(e)(1)(B).) Here, the proposed Class Notice will be sent to Class Members through first-class United States mail. (Settlement, ¶ 6.3.) If any notices are returned with new forwarding addresses, the Administrator will re-mail the notice to such addresses. (*Id*. at ¶ 6.4.) If any notices are returned without a forwarding address, the Administrator "shall conduct a Class Member Address Search and remail the notice to the most current address obtained." (*Id*.)

### B.    The Notice Is Statutorily Compliant

Notices must "clearly and concisely state in plain, easily understood language:

PLAINTIFF MADISON LAIRD'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

(a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defenses; (d) that the class member may enter an appearance through counsel; (e) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (f) the binding effect of a class judgment on class members under Rule 23(c)(3)." (Fed. R. Civ. P. § 23(c)(2)(B).) Here, the proposed Class Notice apprises the Class of all such information. (*See* Moon Decl., **Exhibit A** attached to **Exhibit 1**.) Courts routinely approve class notices even when they provide only general information about a settlement, and the proposed Class Notice exceeds the "general information" threshold, providing more than adequate notice about the Settlement. (*See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980).)

## V.    **CONCLUSION**

The Settlement, which resolves claims and recovers money for approximately 4,383 Class Members, is fair, adequate, and reasonable, especially given the claims and the defenses to them. Plaintiff, therefore, asks the Court to grant preliminary approval of the Settlement and adopt the proposed order submitted herewith.

Respectfully submitted,

Dated: November 17, 2025               MOON LAW GROUP, P.C.

By: _____
   Kane Moon, Esq.
   Allen Feghali, Esq.
   Jacquelyne VanEmmerik, Esq.

   Attorneys for Plaintiff, *Madison Laird*